E-FILED
Thursday, 10 January, 2008 02:52:27 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

CARA J. MYERS,                          )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )          Case No. 06-4056
                                        )
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security         )
Administration,                         )
                                        )
            Defendant.                  )

# O R D E R

This matter is now before the Court on Plaintiff's Motion for Summary Reversal and the Commissioner's Motion to Affirm.  For the reasons set forth below, Plaintiff's Motion for Summary Reversal [# 10] is DENIED, and the Commissioner's Motion to Affirm [#12] is GRANTED.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the parties are of diverse citizenship, and the amount in controversy exceeds $75,000.00.

## BACKGROUND

Plaintiff, Cara Myers ("Myers"), was 63 years' old at the time of her administrative hearing.  (R303) She is 5'3" tall and weighs about 130 pounds.  (R330)  She has a high school education and lives alone following a separation from her husband.  (R303, R308, R330)  In the past, Myers has been employed mending uniforms for a meat processing factory.  (R303)  This required her to pick up 17 bags weighing approximately 50 pounds

each, bring them home, do the mending, and then return them to the factory the next week. (R305)  Myers testified that she quit this job in 2000 because she wasn't physically able to do it anymore.  (R305-06)

On April 23, 2003, Myers applied for disability insurance benefits ("DIB"), alleging disability that began on September 1, 2000.  (R54-56)  Her application was denied both initially and on reconsideration.  (R36-38, R41-43)  Myers requested a hearing before an administrative law judge ("ALJ").  (R44)  A hearing was held before ALJ John Johnson on July 19, 2005, at which Myers, who was represented by counsel, and vocational expert ("VE") G. Brian Paprocki appeared and gave testimony.  (R299-300)

Myers testified that she suffers from chronic fatigue syndrome, asthma, sinus problems, and sleep apnea.  (R311) The chronic fatigue syndrome is worsened by stress and causes her to get very tired and sick to the point where she can't sleep and is "just not able to do anything."  (R312, R321)  Her condition is not constant, but rather calms down and then flares back up.  Id.  She takes Ativan and Tylenol as needed to calm herself down and get some rest.  (R321, R325)  Myers takes medication as needed for her sinus problems and asthma.  (R318-19)  These problems are aggravated by exposure to dogs, cats, mold, heat, humidity, extreme cold, dust, and smoke.  (R320, R335-36)  She also takes Lexipro for depression and has difficulty remembering things or concentrating. (R322, R324, R334)

Myers testified that following the holidays that year, she felt very bad and had to stay in bed for nearly three months, leaving her house once every two weeks to get medicine or food.  (R323)  During this time, her sister came by the house to check on her.  (R324) She thinks that is the worst her condition has ever been.  (R326)

- 2 -

On a good day, Myers will get up around 7:00 a.m.  (R313)  She can fix her own meals and usually has coffee for breakfast; sometimes she will also have cereal or a bagel. Id.  Myers then straightens up her house and goes downstairs to do some laundry.  Id. She likes to go visit her mother once a week and also visits her daughters and grandchildren.  (R314) When she is has gotten a good night's sleep, Myers does not need to lie down during the day unless she has done something very strenuous.  (R315) She can do her own laundry, dishes, what cooking she does, grocery shopping, and driving.  (R327) She can lift a gallon of milk or a 12-pack of soda, but is unable to lift her 27-pound grandson without pain.  (R328-29) She does not have problems sitting for extended periods of time as long as she is in a firm chair or walking, but she does not stand for any long length of time.  (R329) Myers has no problems bending, stooping, squatting, using her hands or using foot controls but does have some difficulty using her arms to reach over her head.  (R334)

When she has not gotten a good night's sleep, then she feels sick and lays down for the rest of the day.  (R315-16) Myers will just watch TV and keep down on the couch, but does not sleep during the day. (R337)  She usually tries to get to bed around 10:30 p.m.  (R315)

During the hearing, Myers' sister Cama Creger ("Creger") testified on her behalf. Creger stated that when Myers' condition is bad, she has to go to bed and stay there for several days and occasionally several weeks.  (R340)  During this time, Myers becomes depressed and is unable to care for herself.  Id.  Creger testified that the depression causes her to not sleep and that the lack of sleep aggravates her condition.  (R341)  Myers  has

problems with her short-term memory and has to make notes and lists to help her remember.  (R344)

The ALJ presented the VE with the following hypothetical:

> My first assumption is that we have an individual who is 63 years old.  She was 58 years old as of the alleged onset date of disability.  She is a female with a high school education and past relevant work as you have indicated in Exhibit 13E.  And she has the following impairments.  She has a history of chronic fatigue syndrome, history of back surgery, degenerative joint disease of the cervical spine and cervical myalgia medically determinable impairment resulting in complaints of low back pain, mild sleep disordered breathing, asthmatic allergy – or asthma, allergic rhinitis, functional antibody deficiency and a history of depression and anxiety. As a result of a combination of those impairments, she has the residual functional capacity as follows.  She cannot lift more than 50 pounds, routinely lift 25 pounds.  She should not be exposed to excessive heat, humidity or cold, dust, fumes, smoke or animal dander, would this individual be able to perform any jobs she previously worked at either as she performed it or as it is generally performed within the national economy?

(R350)  VE Paprocki testified that this hypothetical individual could perform the past relevant work as a seamstress.  (R350-51)

The ALJ then presented a second hypothetical that included the same age, sex, education, past relevant work, and impairments as the first hypothetical but had a different residual functional capacity. (R351)

> [T]his would be an individual who would have the residual functional capacity as follows.  She can lift no more than 20 to 27 pounds, routinely lift 10 pounds.  She can only occasionally work with the arms overhead.  She should not be exposed to excessive heat, humidity or cold, dust, fumes, smoke, animal dander or mold.  She should perform no work which requires close attention to detail and she should not work at more than a moderate level of stress.  Would this individual be able to

- 4 -

perform any jobs she previously worked at either as she performed it or as it is generally performed?

Id.  The VE opined that the additional conditions would eliminate the hypothetical individual's ability to perform her past work because it required close attention to detail and she did not acquire any transferrable skills.  Id.  Work on a regular basis would also be necessary to maintain competitive employability.  (R352)  When questioned by Myers' attorney, VE Paprocki clarified that a day and a half of unscheduled absence would generally be the maximum that an individual could be allowed to miss in one month and be able to maintain the job.  Id.  The individual would likely not be able to meet the productivity requirements of the job if she missed 30-45 minutes of work in addition to regularly scheduled breaks and lunch period during the work day.  (R352-53)

On February 8, 2006, the ALJ issued his decision.  (R15)  The ALJ found that Myers' combination of impairments was a "severe" impairment based on the requirements in the Regulations, in that Myers is significantly affected in the ability to perform basic work activities.  (R16)  The ALJ determined, however, that Myers does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  Id.  After considering the medical evidence in the record and relevant credibility factors, the ALJ found that Myers' had no restriction of her activities of daily living, no difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation of extended duration; her limitations were not sufficient to satisfy the "C" criteria.  (R16-17)  The ALJ determined that Myers had the following residual functional capacity:

[C]laimant is able to perform the mental and physical requirements of work with the following limitations: occasionally

- 5 -

lift 50 pounds and repeatedly lift 25 pounds.  She can stand/walk six hours in an eight hour day and sit six hours in an eight hour day.  She can not tolerate exposure to excessive heat, humidity, cold, dust, fumes, smoke or animal dander.

(R20)  Based on the evidence of record and these findings, the ALJ concluded that Myers was not under a disability as defined in the Social Security Act (the "Act") because she could perform past relevant work as a seamstress as it is customarily performed and identified in the Dictionary of Occupational Titles and as she performed it. (R21)

Myers submitted a Request for Review of Hearing Decision.  (R10-11)  On June 17, 2006, the Appeals Council declined review of her claim, and the ALJ's decision became the final decision of the Commissioner.  (R3-5)  This appeal followed.  The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

In order to be entitled to DIB, a plaintiff must show that his or her inability to work is medical in nature and that he or she is totally disabled.  Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits.  *See* 20 C.F.R. §§ 404.1566, 416.966 (1986).

The establishment of disability under the Act is a two-step process.  First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382(c)(a)(3)(A).  Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment.  McNeil v.

Califano, 614 F.2d 142, 143 (7th Cir. 1980).  That factual determination is made by using a five-step test.  *See* 20 C.F.R. §§ 404.1520, 416.920.

The five-step test is examined by the ALJ, in order, as follows:  (1) is the plaintiff presently unemployed; (2) is the plaintiff's impairment "severe" (20 C.F.R. §§ 404.1521, 416.921); (3) does the impairment meet or exceed one of the list of specified impairments (20 C.F.R. Part 404, Subpart P, Appendix 1); (4) is the plaintiff unable to perform his or her former occupation; and (5) is the plaintiff unable to perform any other work within the national economy?

An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled.  A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. Garfield v. Schweiker, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment.  Tom v. Heckler, 779 F.2d 1250 (7th Cir. 1985); Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984).

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence.  Pugh v. Bowen, 870 F.2d 1271 (7th Cir. 1989).  The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied.  Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986).  In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a

whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504 (1985); Imani v. Heckler, 797 F.2d 508 (7th Cir.), *cert. denied*, 479 U.S. 988, 107 S.Ct. 580 (1986).

In her appeal, Myers' pleadings raise essentially two claims: (1) that the ALJ erred in disregarding medical evidence in the record, and (2) that the ALJ erred by incorrectly determining her residual functional capacity ("RFC") without supporting medical evidence. The Court disagrees and finds that the ALJ's finding that Myers has the residual functional capacity to perform the physical exertion and nonexertional requirements of her past work as a seamstress is supported by substantial evidence.

Myers first argues that the ALJ failed to give appropriate weight to medical evidence regarding her limitations. Specifically, she argues that the ALJ ignored evidence of her non-exertional limitations, including Dr. Singly's report, findings of depression, inability to deal with stress, and memory problem. The Court disagrees.

In his July 23, 2003, report, Dr. Singly noted that Myers appeared nicely dressed and groomed, was pleasant in demeanor, spoke well and clearly, and was obviously of normal intelligence. (R210) Her mood was "quite normal, with no impression of significant depressive affect." (R211) Alertness factors and personal orientation were adequate, and she demonstrated an adequate short term memory/concentration performance for her age. Id. Dr. Singly concluded that her self-reported situation "seems to break down almost entirely to physical/medical based issues" that he was not qualified to judge. (R212) The majority of his clinical findings were normal, and he found no demonstrated mood disorder

that was currently a significant factor.  Id.  The only portion of Dr. Singly's report that could possibly be deemed helpful to Myers' case is his conjectural comment that given her reported physical limitations, "a depressive adjustment would not be unexpected" and the speculation that because she supported herself as a seamstress for years, he thought that "she would continue to be gainfully employed if she was able."  (R212)

With all due respect, this report falls far short of establishing that Myers was suffering from a severe mental limitation as a result of depression and was therefore disabled.  To the contrary, conjecture and speculation aside, Dr. Singly's finding is that mood was not a significant factor in Myers' condition at that time.  Furthermore, the record contains the opinions of two state agency reviewing psychologists who found that Myers did not have any severe impairment as defined by the applicable regulations.  On August 5, 2003, Dr. Kirk Boyenga reviewed the medical evidence of record, including Dr. Singly's report, and found that she had no medically determinable impairment.  Dr. John Tomassetti concurred with Dr. Boyenga's findings on December 4, 2003.  State agency reviewing physicians are experts in Social Security disability evaluation, and it was reasonable for the ALJ to rely on their opinions, particularly in the absence of any objective medical evidence to the contrary.

Myers further suggests that following her examination by Dr. Singly, she suffered a "depressive adjustment."  In support of this argument, she cites a series of neurological assessments conducted by Dr. M.A. Sanguino between February and July 2005.  The notes reflect Myers' complaints of being under stress, depression, sensations of burning all over, and insomnia.  (R263-66) However, these notes do not contain any independent assessment of her limitations and reflect that she was somewhat responsive to

- 9 -

conservative treatment with medications and Myers' own report that she had improved with treatment.   (R263-64) Dr. Sanguino's reports were noted by the ALJ and considered in conjunction with the other evidence of record in concluding that she had: (1) no restriction of her activities of daily living; (2) no difficulties in maintaining social functioning; (3) mild difficulties in maintaining concentration, persistence or pace; and (4) no episodes of decompensation of extended duration.

Thus, it is clear from the ALJ's Decision that he did not ignore Myers' alleged non-exertional limitations as she contends on appeal.  The fact that a claimant has suffered from some mild form of depression from time to time or even has a diagnosis of a depressive disorder simply does not direct a finding of disability, as a diagnosis alone does not establish disability.  Estok v. Apfel, 152 F.3d 636, 639 (7th Cir. 1998).  Rather, such evidence must be considered in the context of the entire record in this case, which is precisely what the ALJ did here.

Myers next argues that the ALJ did not give appropriate consideration to her testimony and the testimony of her sister at the hearing.  To the contrary, the ALJ spent nearly a full page in his Decision addressing this testimony.  Myers' sister testified, among other things, that Myers had poor memory and concentration.  The ALJ discounted this testimony because it was largely based on Myer's complaints of subjective symptoms and observations of her behavior.  The ALJ similarly discounted Myer's testimony.

The record indicates that in considering Myers' alleged non-exertional limitations, the ALJ gave full consideration to the medical evidence of record and fully considered her subjective complaints of pain and limitation, crediting them to the extent that they were consistent with objective evidence in the record.  It is well-settled that "[a]n ALJ may

discount subjective complaints of pain [or limitation] that are inconsistent with the evidence as a whole." Knight v. Chater, 55 F.3d 309, 314 (7th Cir. 1995). Such credibility determinations may not be overturned by this Court unless they are patently wrong. Herr v. Sullivan, 912 F.2d 178, 182 (7th Cir. 1990); Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).

In reaching the conclusion that the testimony of Myers and her sister was not fully credible regarding her alleged non-exertional limitations, the ALJ relied on the following facts. Her complaints are vague, general, and lacking the specificity that might otherwise make them more convincing. Physical examinations have documented full ranges of motion in her cervical and lumbar spine. Treatment notes have reflected no hospitalizations or anything other than conservative treatment for her conditions, and the medical record does not support that she is limited to the degree claimed. Myers testified that although she has some bad days, she is able to shop, drive, go out to dinner, visit her mother, and do for herself unless she is sick. The record also indicates that she engages in some average daily activities, largely takes care of her own personal needs, and is able to walk and sit for periods of time without difficulty. Such abilities are largely inconsistent with her claims of disability. After a review of the entire record, this Court finds that the ALJ's credibility determination was not patently wrong but was, in fact, reasonable and supported by substantial evidence in the record.

Myers' second argument is that the ALJ erred in determining her RFC without supporting medical evidence. Specifically, she argues that there is no evidence indicating that she remains able to lift 50 pounds occasionally, as the only testimony on the subject

was the testimony by Myers and her sister that Myers could no longer lift the heavy bags of mending sent from the meat processing plant.

The ALJ found that Myers had the RFC to perform the mental and physical requirements of work with the limitations that she could only "occasionally lift 50 pounds and repeatedly lift 25 pounds.  She can stand/walk six hours in an eight hour day and sit six hours in an eight hour day.  She can not tolerate exposure to excessive heat, humidity, cold, dust, fumes, smoke or animal dander."  (R20) Of these findings, Myers only challenges the lifting limitations.

The medical evidence considered by the ALJ indicates that in 1998, Myers advised Dr. Usharani Kumar that she had been diagnosed with chronic fatigue syndrome in 1988. Dr. Kumar noted that there were no objective findings in support of her condition and told her to concentrate on stress management techniques. Treatment notes from 1999 note that she was stable and should follow up in June 2000.  In December 2000, an x-ray showed degenerative joint disease with cervical myalgia.  By April 2001, Myers complained of increased fatigue and insomnia, but reported that her neck pain had improved.  Dr. Kumar opined that her symptoms appeared to be related to depression and referred her to a psychiatrist.  The record does not contain any records from this referral, but in June 2001, she reported to Dr. Kumar that she had been diagnosed with anxiety disorder.  She had several prescription changes and again noted that her neck pain had improved considerably.

On March 7, 2002, Myers had a normal musculoskeletal exam, reported that she had stopped taking medication for her neck pain because she had improved considerably,

and reported that she stopped taking her anxiety medications because they made her feel like a zombie.  On September 10, 2002, her musculoskeletal exam was also normal.

Myers also sought care from her primary physician, Dr. E.L. Elbert for sinus problems, asthma, and respiratory infections.  In November 2002, she had a sleep study that revealed mild apnea, but ultimately, Dr. Elbert found that her mild apnea was not significant enough to warrant further attempts at intervention.

In April 2003, Myers was diagnosed with a functional antibody deficiency that predisposed her to frequent upper respiratory infections.  Treatment successfully reduced the number and severity of these infections before she discontinued the treatment due to a change in her insurance coverage.

In July 2003, Myers underwent a consultative examination with a state agency physician, Dr. Peter Biale.  Dr. Baile observed that Myers was well-developed, well-nourished, and in no distress.  She was able to move about without any apparent hesitation, had a normal range of motion, and did not demonstrate any gross mood disorder.  She was able to bear full weight, squat, and walk heel-to-toe.  With respect to any mental status issues, Dr. Baile deferred to her psychological examination with state agency psychologist, Dr. Singly, who concluded that her situation broke down almost entirely to physical/medical issues and observed no mood disorder or significant depressive affect at that time.  Despite her claimed difficulty in concentration, Dr. Singly observed adequate alertness factors and personal orientation, with adequate short-term memory and concentration for someone of her age.

On August 7, 2003, Dr. Barry Free reviewed the medical evidence of record and completed an RFC assessment.  He found that Myers could lift 50 pounds occasionally, 25

pounds frequently, stand, walk, or sit for about 6 hours in an 8-hour workday, push or pull without limitation, and had no established postural, manipulative, visual, communicative, or environmental limitations.  Dr. Free concluded that the severity of the symptoms claimed by Myers was disproportionate to the expected severity on the basis of her medically determinable impairments, noting no neurological deficits, no muscular deficits, no evidence of motor/muscle weakness, and no atrophy, redness, swelling or deformity of any joints/muscles.  Dr. Free's RFC assessment was affirmed by Dr. Earl Donelan in December 2003.  As discussed previously in this Order, Drs. Boyenga and Tomassetti determined that Myers had no medically determinable mental impairment during this same time frame.

On September 22, 2003, Dr. Ebert sent a letter in support of Myers' application for benefits in which he indicated that most of her medical problems had been treated and were stable at the present time, as well as the fact that her mild periodic depression was well controlled with medication.  Although the record indicates that Dr. Ebert saw Myers for about 15 minutes twice a year, he opined without documentation or reference to specific findings that her "chronic fatigue does not allow her to work due to her inability to concentrate and have the energy to do any kind of work" for an 8-hour period.

In November 2004, Dr. Ebert completed a Pulmonary RFC questionnaire in which he noted that Myers' asthma attacks occurred once or twice per year and could generally be treated over the phone.  He further stated that emotional factors play a part in the severity of her symptoms and functional limitations.  Dr. Ebert responded that only rarely would Myers' symptoms be severe enough to interfere with the attention and concentration needed to perform simple work tasks and that she was capable of performing low stress jobs.  He did not have adequate information to respond to requests for her ability to

walk/sit/stand, need for unscheduled breaks, lifting ability, ability to twist/stoop/crouch/squat/climb, or how many days per month she might be likely to be absent from work due to her impairments.

The ALJ noted the apparent inconsistencies between the general statements asserted in Dr. Ebert's September 2003 letter to the Social Security Administration and his answers when responding to specific questions in his November 2004 RFC questionnaire. The ALJ then gave specific reasons for discounting Dr. Ebert's opinions. In addition to their apparent inconsistency, neither opinion was supported by medical signs or laboratory findings.

Thus, the ALJ's RFC assessment was not unsupported by medical evidence in the record, as the lifting limitations recognized by the ALJ were the same limitations contained in the RFC assessments completed by Drs. Free and Donelan in 2003, both of which concluded that she was capable of performing medium work. There is no other RFC assessment or specific findings in the record contradicting these findings, particularly as Dr. Ebert declined to address this issue and in fact opined that she was capable of performing low stress jobs.

To the extent that Myers suggests that the ALJ erred in discounting Dr. Ebert's opinions, the Seventh Circuit has recognized that a treating physician's opinion is not binding on the Commissioner. Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982). On this issue, the Seventh Circuit has found that:

> The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability. The regular physician also may lack an appreciation of how one case compares with other related cases. A consulting physician may bring both impartiality and expertise.

Stephens v. Heckler, 766 F.2d 284, 289 (7ᵗʰ Cir. 1985).  However, there is no presumption of bias against a treating physician's disability opinion.  Edwards v. Sullivan, 985 F.2d 334, 337 (7ᵗʰ Cir. 1993).  Rather, the ALJ, as the trier of fact, must consider the treating physician's possible bias.  Id.  The Commissioner will not give controlling weight to the treating physician's opinion on the nature and severity of the claimant's impairments unless the treating physician's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques. . . ."  20 C.F.R. § 416.927(d)(2).

> In short . . . it is up to the ALJ to decide which doctor to believe -- the treating physician who has experience and knowledge of the case, but may be biased, or that of the consulting physician, who may bring expertise and knowledge of similar cases -- subject only to the requirement that the ALJ's decision be supported by substantial evidence.

Micus v. Bowen, 979 F.2d 602, 609 (7ᵗʰ Cir. 1992).

It is the province of the ALJ to resolve evidentiary conflicts.  Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534, 542 (7ᵗʰ Cir. 1992); Herr v. Sullivan, 912 F.2d 178, 181 (7ᵗʰ Cir. 1990).  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)."  Walker v. Bowen, 834 F.2d 635, 640 (7ᵗʰ Cir. 1987).  The existence of an evidentiary dispute is not grounds for reversing the ALJ's decision to credit one version of facts over another.  Herr v. Sullivan, 912 F.2d 178, 181 n.4 (7ᵗʰ Cir. 1990)  However, the ALJ must explain with particularity the basis of his decision.  Young v. Secretary of Health and Human Services, 957 F.2d 386, 393 (7ᵗʰ Cir. 1992).

- 16 -

Dr. Ebert's opinion and RFC assessment was discounted after the ALJ properly noted that it was devoid of any objective evidence in support of the claimed limitations and conclusory assertions of disability, as well as suffering from internal inconsistency. *See* Knight v. Chater, 55 F.3d 309, 314 (7th Cir. 1995) (finding it entirely permissible to discount the opinion of a treating physician where the opinion is unsupported, internally inconsistent, or inconsistent with other evidence.)  Thus, the ALJ considered but reasonably discounted the conclusions of Dr. Ebert, as they were either unsupported by or contradictory to other objective medical evidence in the record.  His rationales for doing so were sufficiently articulated in his written decision, and his conclusions are supported by substantial evidence.

Myers has the burden of demonstrating that she is disabled and providing medical evidence in support of her claim.  Scheck v. Barnhart, 357 F.3d 697, 702 (7th Cir. 2004).  Here, the record does not contain reliable medical evidence that is inconsistent with the ALJ's findings.  This is not a case where medical records were insufficient or incomplete, which could necessitate further development of the record.  Rather, the medical records simply failed to compel the conclusion that Myers is disabled within the meaning of the Act.  Accordingly, the Court must conclude that the ALJ's determination was supported by substantial evidence.

**CONCLUSION**

For the reasons set forth herein, Plaintiff's Motion for Summary Reversal [#10] is

DENIED, and the Commissioner's Motion to Affirm [#12] is GRANTED.  This matter is now

TERMINATED.

ENTERED this 10th day of January, 2008.


s/ Michael M. Mihm
Michael M. Mihm
United States District Judge